IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHARLES STRAIN,

        Plaintiff,                    No. CIV S-05-0474 GEB GGH P

    vs.

CHIEF MEDICAL OFFICER
R. SANDHAM, et al.,
                                  ORDER&

        Defendants,           FINDINGS AND RECOMMENDATIONS

                                /

I. Introduction

        Plaintiff, a former state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' motion for summary judgment, filed on May 2, 2008, to which plaintiff filed his opposition on July 2, 2008; defendants' reply was filed on July 31, 2008.

II. Complaint

        This case is proceeding on an amended complaint, filed on June 2, 2006.[1] Plaintiff's remaining claim names two (2) defendants who were employed at High Desert State

---

[1] The original complaint was filed on March 9, 2005.

1

1  Prison (HDSP): Dr. James and Dr. Sandham.

2  Plaintiff suffers from significant back pain stemming from an injury in 1986. Complaint (Comp.) at 6. In 2001, while incarcerated at California State Prison-Solano (CSP-Solano), plaintiff was prescribed narcotic medications to treat the pain. Id. Plaintiff was transferred to HDSP on February 26, 2004, at which time plaintiff had been taking methadone and other prescriptions for approximately three years. Comp. at 2. Defendant Dr. Sandham, upon plaintiff's transfer to HDSP, cut off his medication before his then-current prescription approached its monthly expiration date, despite plaintiff's cautioning that he would be caused severe withdrawal pain if forced to go "cold turkey," and might become suicidal. Comp. at 9.

Two days after his transfer, on February 28, 2004, plaintiff notified Barton, a medical technical assistant (MTA) who has been dismissed as a defendant, that he was beginning to show or exhibit signs of withdrawal, such as an inability to eat, diarrhea, vomiting, difficulty sleeping, tremors, and pain. Comp. at 10. According to MTA Barton's report, defendants Dr. Sandham and Dr. James knew of plaintiff's condition and "all agreed [he] would have to go through the withdrawals as unpleasant as it is." Id.

On March 5, 2004, plaintiff states he had not eaten in a week and was in very bad pain. Comp. at 11. On March 11, 2004, plaintiff was seen by defendant Dr. James, and requested anti-nausea medication and Prilosec, due to uncontrollable vomiting and severe pain but was refused. Id. Defendant Dr. James only changed plaintiff's prescription from Motrin to Tylenol and scheduled a follow-up appointment in 30 days. Comp. at 11-12.

On March 13, 2004, plaintiff began vomiting blood, but an RN told him that he would just have to suffer through it. Comp at 12. After retching blood violently all day, floor officers demanded that plaintiff receive medical attention and he was transported to Washoe Medical Center. Id. Plaintiff was stabilized at Washoe Medical Center by March 15, 2004, given morphine and other medications, and was provided a 30-day prescription of Prilosec and Maalox but never received any Maalox from doctors at HDSP. Comp. at 13.

On March 19, 2004, plaintiff was seen by defendant Dr. James and informed the doctor that he was having problems with bowel movements, had rapid weight loss and little to no sleep; that he was not receiving the medications prescribed from Washoe Medical Center; that he was in great pain and still vomiting blood. Comp. at 14. Plaintiff was seen by defendant Dr. James on March 26, 2004, and April 9, 2004, and told him that he was suffering severe back pain, pain in his right leg and sciatica and sleeping little; by the latter appointment he still felt very weak although his withdrawals were basically over. Comp. at 15-16.

III. Motion for Summary Judgment

Defendants move for summary judgment on the ground that they were not deliberately indifferent to plaintiff's health and safety nor did they intentionally subject him to any known risk or serious harm. Defendants contend there is no triable issue of fact and they are entitled to judgment as a matter of law. Motion for Summary Judgment (MSJ), at 2-3.

Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Fed. R. Civ. P. 56(c) is met. "The judgment sought shall be rendered forthwith if . . . there is no genuine issue as to any material fact, and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct., 2548, 2553 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing

1  sufficient to establish the existence of an element essential to that party's case, and on which that
2  party will bear the burden of proof at trial.  See id. at 322, 106 S. Ct. at 2552.  "[A] complete
3  failure of proof concerning an essential element of the nonmoving party's case necessarily
4  renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be
5  granted, "so long as whatever is before the district court demonstrates that the standard for entry
6  of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323, 106 S. Ct. at 2553.

7  If the moving party meets its initial responsibility, the burden then shifts to the
8  opposing party to establish that a genuine issue as to any material fact actually does exist.  See
9  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356
10 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may
11 not rely upon the allegations or denials of its pleadings but is required to tender evidence of
12 specific facts in the form of affidavits, and/or admissible discovery material, in support of its
13 contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,
14 106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is
15 material, i.e., a fact that might affect the outcome of the suit under the governing law, see
16 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.
17 Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the
18 dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the
19 nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

20 In the endeavor to establish the existence of a factual dispute, the opposing party
21 need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the
22 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
23 versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary
24 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
25 genuine need for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.
26 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255, 106 S. Ct. at 2513. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct. 1356 (citation omitted).

IV. <u>Undisputed Facts</u>

The following facts are either not disputed, or following the court's review of the evidence submitted, have been deemed undisputed: During the relevant time, Dr. Sandham served as the Chief Medical Officer at HDSP. Defendants' Undisputed Facts (DUF) #1. Dr. Sandham was responsible for supervising prison medical staff and overseeing the care and treatment of inmate patients. DUF #2. Dr. James was a physician and surgeon at HDSP during the relevant time and was responsible for the examination and treatment of inmates. DUF #22-23.

Plaintiff had previously been receiving medications, including methadone, at CSP-Solano for his back pain before being transferred to HDSP on February 26, 2004. DUF #5. Plaintiff had been prescribed narcotic pain medication since 2001. Comp. at 6. Dr. Sandham informed plaintiff on February 26, 2004, that he would not be receiving methadone at HDSP. DUF #4. At the time of plaintiff's arrival to HDSP, narcotics were not dispensed due to non-

1   medical reasons.  DUF #9.  Methadone has a high potential for abuse.  DUF #8.

2           As a physician and surgeon at HDSP, Dr. James provided care and treatment to
3   plaintiff, but inmates and plaintiff are not assigned a primary doctor, rather they are seen by any
4   available doctor.  DUF #25.  Dr. James examined and treated plaintiff on March 11, March 19,
5   March 26 and April 9, 2004.  DUF #32.  Plaintiff was treated by other physicians on March 2,
6   May 7, June 14, June 20, June 28 and June 29, 2004.  Id.

7           On February 26, 2004, Dr. James gave telephone orders to follow Dr. Sandham's
8   order for discontinuing plaintiff's medications and to schedule plaintiff for a medical and a
9   mental health referral within one week.  DUF #33.  On February 28, 2004, plaintiff began
10  experiencing withdrawal symptoms of diarrhea, vomiting and lack of appetite.  Exh. D to
11  Plaintiff's Declaration at 105.  Dr. James and Dr. Sandham agreed that plaintiff would have to
12  endure the withdrawal as unpleasant as it was.  Id.  Plaintiff was seen by a doctor on March 2,
13  2004, who noted that plaintiff was clearly in withdrawal and prescribed Motrin.  Id. at 106.

14          On March 11, 2004, Dr. James examined plaintiff for back pain, vomiting, weight
15  loss and drug withdrawal complaints.  DUF #34.  Dr. James assessed plaintiff with disc disease,
16  withdrawal state and anxiety with gastrointestinal symptoms and ordered Tylenol.  Id.

17          On March 13, 2004, plaintiff was taken to Washoe Medical Center due to
18  vomiting blood.  DUF #35.  Plaintiff was treated for injuries to his esophagus from excessive
19  vomiting.  Declaration of Plaintiff (Pl. Dec.), at ¶ 15.  Plaintiff was also given morphine by
20  doctors at Washoe Medical Center.  Comp. at 13.

21          On March 19, 2004, Dr. James treated plaintiff for complaints of weakness,
22  feeling faint when standing, vomiting, loss of weight, not sleeping and no bowel movements in
23  the previous week.  DUF #36.  Plaintiff was advised to drink more water and a blood test was
24  taken that came back normal.  DUF #36-37.  Plaintiff was again seen by Dr. James on March 26,
25  2004, for complaints of excessive back pain.  On April 9, 2004, Dr. James examined plaintiff
26  who complained of constant back pain but felt better and was over withdrawal symptoms.  DUF

#40, Pl. Dec. at ¶ 21.

V. <u>Disputed Facts</u>

      Defendants' state that plaintiff received all reasonable and necessary care for his condition, within community standards. DUF #20, 43. Plaintiff disputes this and alleges that the care was medically unacceptable. Comp. at 9. Defendants maintain that appropriate steps were taken when plaintiff's methadone was discontinued. DUF #11. Plaintiff disputes this and alleges that being withdrawn from methadone "cold turkey." posed potential serious health hazards and he suffered harm. Comp. at 9, 13. Defendants maintain that withdrawal may be uncomfortable, but is not life-threatening. DUF #10.

VI. <u>Eighth Amendment Claims</u>

      Plaintiff alleges that under the Eighth Amendment, the defendants were deliberately indifferent to his serious medical needs by not continuing his methadone prescription when plaintiff was transferred to HDSP, and withdrawing him from the medication "cold turkey."

      <u>Legal Standard for Eighth Amendment Claim</u>

      In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. <u>Wilson v. Seiter</u>, 501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); <u>McKinney v. Anderson</u>, 959 F.2d 853 (9th Cir. 1992) (on remand). The requisite state of mind for a medical claim is "deliberate indifference." <u>Hudson v. McMillian</u>, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

      A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Indications that a prisoner has a serious need for medical treatment are the following: the existence of an

injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. See, e.g., Wood v. Housewright, 900 F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989). McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court defined a very strict standard which a plaintiff must meet in order to establish "deliberate indifference." Of course, negligence is insufficient. Farmer, 511 U.S. at 835, 114 S. Ct. at 1978. However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient. Id. at 836-37, 114 S. Ct. at 1979. Neither is it sufficient that a reasonable person would have known of the risk or that a defendant should have known of the risk. Id. at 842, 114 S. Ct. at 1981.

It is nothing less than recklessness in the criminal sense – subjective standard – disregard of a risk of harm of which the actor is actually aware. Id. at 838-842, 114 S. Ct. at 1979-1981. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837, 114 S. Ct. at 1979. Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847, 114 S. Ct. at 1984. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842, 114 S. Ct. at 1981. If the risk was obvious, the trier of fact may infer that a defendant knew of the risk. Id. at 840-42, 114 S. Ct. at 1981. However, obviousness per se will not impart knowledge as a matter of law.

Also significant to the analysis is the well established principle that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. Jackson v. McIntosh, 90 F.3d 330 (9th Cir.1996); Franklin v. Oregon,

662 F.2d 1337, 1344 (9th Cir.1981).

      Additionally, mere delay in medical treatment without more is insufficient to state a claim of deliberate medical indifference. Shapley v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404, 408 (9th Cir.1985). Although the delay in medical treatment must be harmful, there is no requirement that the delay cause "substantial" harm. McGuckin, 974 F.2d at 1060, citing Wood v. Housewright, 900 F.2d 1332, 1339-1340 (9th Cir.1990) and Hudson, 112 S. Ct. at 998-1000. A finding that an inmate was seriously harmed by the defendant's action or inaction tends to provide additional support for a claim of deliberate indifference; however, it does not end the inquiry. McGuckin, 974 F.2d 1050, 1060 (9th Cir.1992). In summary, "the more serious the medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established deliberate indifference on the part of the defendant." McGuckin, 974 F.2d at 1061.

      Moreover, a physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir.1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. Id. A plaintiff must show that "the course of treatment the doctors chose was medically unacceptable under the circumstances" and that the treatment was chosen "in conscious disregard of an excessive risk to [a] plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.1996) ("where a defendant has based his actions on a medical judgment that either of two alternative courses of treatment would be medically acceptable under the circumstances, plaintiff has failed to show deliberate indifference, as a matter of law"), cert. denied, 519 U.S. 1029, 117 S.Ct. 584, (1996).

Analysis

      Plaintiff has submitted sufficient evidence upon which a reasonable jury could rely to find that defendants were deliberately indifferent to plaintiff's serious medical needs, by refusing to provide methadone, instead providing plaintiff Tylenol and other over-the-counter

9

medication for his back pain. Plaintiff has demonstrated a triable issue of fact concerning the harm he suffered during the ensuing withdrawal when he was taken off methadone, "cold turkey."

Initially, the court finds that plaintiff's back injury and the ongoing treatment for the pain is properly characterized as a serious medical condition under the Eighth Amendment. Plaintiff's injury significantly affects his daily activities and a reasonable doctor would find his injury worthy of treatment.

The court finds that there is a genuine issue concerning defendants' decision not to provide methadone and remove plaintiff from the medication, "cold turkey," after plaintiff was treated with methadone for several years by prison doctors at CSP-Solano. Prison officials are deliberately indifferent to a prisoner's serious medical needs when they "interfere with treatment once prescribed." Estelle, 429 U.S. at 104-05. The Ninth Circuit has found deliberate indifference where prison officials "deliberately ignore the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner." Hamilton v. Endell, 981 F.2d 1062, 1066 (9th Cir.1992); see also, Wakefield v. Thompson, 177 F.3d 1160, 1165 (9th Cir.1999) ("[A] prison official acts with deliberate indifference when he ignores the instructions of the prisoner's treating physician or surgeon."); Tolbert v. Eyman, 434 F.2d 625, 626 (9th Cir.1970) (per curiam) (inmate states cognizable civil rights claim when he alleges he was diabetic and "the warden refused to allow him authorized medicine that he needed to prevent serious harm to his health").

Plaintiff was denied his previous course of treatment for non-medical reasons. Defendants' allege that methadone was not prescribed at HDSP due to problems with drug hoarding and drug trafficking in the prison yard and officials were unable to control the situation. DUF #9, 29. Plaintiff disputes that this was the reason methadone was not prescribed. Regardless, it is undisputed that non-medical reasons dictated defendants' medical treatment decisions.

1    Defendants' argue that plaintiff received adequate treatment with over-the-counter
2 products such as Tylenol and Motrin and that plaintiff merely disputes the treatment he received.
3 However, it is undisputed that plaintiff was treated with methadone for several years by doctors
4 at CSP-Solano. Defendants state that withdrawal from methadone can be uncomfortable,[2] but
5 plaintiff was monitored and withdrawal is not life-threatening. DUF #10, 11, 30, 31. Plaintiff
6 was transferred to HDSP on February 26, 2004, at which time he stopped receiving his
7 prescribed doses of methadone. Plaintiff began experiencing withdrawal symptoms as early as
8 February 28, and was not seen by a doctor until March 2, whom only prescribed Motrin. Plaintiff
9 was not seen by a doctor again, until Dr. James treated him on March 11. It is undisputed that,
10 two days later, plaintiff was taken to the Washoe Medical Center emergency room.

11    Plaintiff's withdrawal symptoms and the continuing pain raise significant
12 questions regarding the decision to remove him from methadone "cold turkey," or at all. Doctors
13 at Washoe Medical Center emergency room felt plaintiff's condition required the use of
14 morphine when plaintiff was taken there by ambulance on March 13, 2004, due to excessive
15 vomiting that injured his esophagus. Plaintiff has demonstrated a genuine issue of material fact
16 that "the course of treatment he received from defendants was medically unacceptable under the
17 circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.1996). Plaintiff has raised
18 triable issues that Tylenol and other over-the-counter medication were inappropriate substitutes
19 for methadone, under these circumstances. Thus, plaintiff has submitted sufficient evidence for a
20 reasonable jury to infer that defendants' treatment violated the Eighth Amendment.

21    Accordingly, IT IS HEREBY ORDERED that,

22    1. Plaintiff inform the court within twenty (20) days of this order, if plaintiff
23 wishes to have counsel appointed.

24 \\\\\

---

[2] Defendants' do not elaborate on "uncomfortable."

IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment, filed on May 2, 2008 (#111), be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 01/22/09

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH: AB
stra0474.sj